Argued and submitted May 7, decision of Court of Appeals and order of circuit court reversed, case remanded to circuit court for further proceedings July 30, 1992

STATE OF OREGON,
*Petitioner on Review,*

*v.*

JAMES MAX LICHTY,
*Respondent on Review.*

(CC 89-1147; CA A65661; SC S38938)

835 P2d 904

Michael C. Livingston, Assistant Attorney General, Salem, argued the cause and filed the petition for petitioner on review. With him on the petition were Charles S. Crookham, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

John E. Hunnicutt, St. Helens, argued the cause and filed the response for respondent on review.

GILLETTE, J.

**GILLETTE, J.**

In this criminal case, defendant is charged with possession of a controlled substance, cocaine. An arresting officer observed and then seized the cocaine in plain view, after the officer stopped defendant on the basis of a named citizen's report that defendant's wallet had a bag of cocaine in it. Defendant moved the trial court to suppress the cocaine seized because, defendant argued, the named citizen's report did not give the officer reasonable suspicion to justify the stop under ORS 131.615(1).[1] The trial court suppressed the cocaine. The Court of Appeals affirmed. *State v. Lichty*, 110 Or App 294, 821 P2d 1114 (1991). We reverse.

The pertinent historical facts, as set out in the lead opinion of the Court of Appeals, are not disputed.

"On June 7, 1989, a clerk in the Quick Shop Minit Mart in Rainier found a wallet on the counter. The clerk handed it to the store's owner, Storie, who opened it to determine its owner. When she opened the wallet, a plastic bag containing a white powdery substance fell out. Coincidentally, Police Chief Derby was standing in front of the store at the time. Derby had known Storie for approximately 11 years. He was 'closely acquainted' with Mr. and Mrs. Storie and 'got to be good friends with them.' Storie went outside and told Derby, 'I just found this wallet in the store, * * * a bag of coke fell out of it.' As Storie started to hand the wallet to Derby, defendant drove up with a companion. His companion yelled, '[T]hat's our wallet.' Storie handed the wallet to the companion. As defendant began to back out of the lot, Derby 'hollered for [defendant] to stop the vehicle, and he did so.' Derby asked to see the wallet. He examined it, then 'looked in the vehicle [and] observed a baggie containing a white powdered substance sitting on the console.' Derby seized the baggie. The white powdered substance in the baggie proved to be cocaine."

*State v. Lichty, supra*, 110 Or App at 296.

In a pretrial motion, defendant moved to suppress the cocaine on the ground that, among others, the stop of defendant was unlawful under ORS 131.615(1), because

---

[1] The text of ORS 131.615(1) is set out at note 2, *post*.

Derby lacked a reason to suspect that defendant was committing (or had committed) a crime.[2] The trial court agreed with defendant and suppressed the cocaine, stating:

"I believe the officer would have had to know more than what he did: (1) the store owner for years; (2) a lost billfold; (3) a statement that it contains cocaine. The above constitutes the totality of the basis of his reasonable suspicion. Not enough — change the facts to a police officer finding the billfold or a druggist and the answer would probably be different."

The state appealed. The Court of Appeals affirmed, holding that, although Storie was trustworthy, "her communication to Derby, by itself, was insufficient to give rise to a reasonable suspicion." *State v. Lichty, supra,* 110 Or App at 297. The Court of Appeals stated:

"Storie told Derby, 'I just found this wallet in the store, * * * a bag of coke fell out of it.' She did not tell him why she believed that the substance in the bag was cocaine. She did not describe the bag or its contents to Derby. Her tip merely conveyed her conclusion that it was cocaine. A conclusion, by itself, is not a specific articulable fact. Although Derby had known Storie personally for several years, he had no basis for knowing whether she had any idea what cocaine looked like. He conceded, on cross-examination, that there was no 'reason to believe that she knows any more about cocaine than anybody else' in the courtroom, other than Derby and the district attorney. Derby testified that, based on his training and experience, he knew that cocaine 'is usually packaged in small amounts' in baggies. However, nothing in the record indicates that Derby had any reason to believe that the 'bag' in defendant's wallet resembled the kind of packaging that he associated with cocaine.

"Under the circumstances, Derby could not form a reasonable suspicion that defendant was in possession of a controlled substance, unless he corroborated Storie's tip with observations of his own. He did not."

---

[2] ORS 131.615(1) provides:

"A peace officer who reasonably suspects that a person has committed a crime may stop the person and, after informing the person that the peace officer is a peace officer, make a reasonable inquiry."

ORS 131.605(4) defines "reasonably suspects" as:

"a belief that is reasonable under the totality of the circumstances existing at the time and place the peace officer acts as authorized in ORS 131.605 to 131.625."

*Id.* at 297-98.

Rossman, J., dissented, stating that "[a]n officer is not required to establish an informant's familiarity with the specific drug at issue in order to form a reasonable suspicion." *Id.* at 298. "Given Derby's familiarity with the informant, he could reasonably conclude that she honestly believed that the wallet contained contraband. There was testimony that the appearance of cocaine and its packaging are not so unique that only experts should be assumed to be familiar with it." *Id.* at 299.

We allowed review in this case to address the issue whether a named informant's statement that a wallet found in the informant's store contains "a bag of [cocaine],"[3] is sufficient to give a police officer reasonable suspicion that, once the wallet is returned to its owner, the owner of that wallet is in possession of a controlled substance.

The state argues that "[t]he question is not whether Derby corroborated [Storie's] report or whether she explained to him why she believed the contents of the baggie to be cocaine, but rather, whether her report, under all of the circumstances, had sufficient indicia of reliability to support reasonable suspicion." The state contends that Storie's statement to the officer had sufficient reliability, because "the appearance of cocaine and its packaging are not so unique that non-experts should be assumed to be unfamiliar with it." The state further argues that, "[e]ven assuming that some corroboration of the report was necessary in this case to establish reasonable suspicion, that requirement was satisfied. Although brief, the report that Storie had found a *bag* of cocaine *in a wallet* was consistent with what [Derby] knew to be the way cocaine 'is usually packaged' — *i.e.*, in small amounts in plastic baggies." (Emphasis in original.)

Defendant acknowledges that "[t]he law recognizes that a [named] citizen who volunteers information to a police officer is entitled to be trusted." He argues that, "[w]hile [Storie] 'attempted' to * * * be truthful, * * * Derby had no

---

[3] Storie testified that she told Derby that she had found a "bag of coke" in the wallet. Derby testified that Storie told him that she had found a bag of cocaine. No one questions that Storie intended to tell Derby, or that he understood her to be telling him, that she had found a bag of the controlled substance, cocaine.

way of knowing [that] she was accurate. The matter about which she was attempting to be truthful and veracious was something beyond her [knowledge]. The police officer knew that." Defendant further states that "Derby could have accepted her declaration as the truth and made the stop if he had known more, *e.g.*, what the container holding the powder looked like, what the material in the container looked like, how much powder there was — a lot, a little, a pinch — some quantitative call by * * * Storie."

We first address the standard for reasonable suspicion under ORS 131.615(1), quoted at note 2, *supra*. It is clear that "the statutory standard for the stopping and questioning of a person concerning his possible criminal activity was intended to be less than the standard for probable cause to arrest." *State v. Valdez*, 277 Or 621, 628, 561 P2d 1006 (1977).[4] The standard is reasonable suspicion, an "objective test of observable facts." *Id.* at 629; *State v. Tucker*, 286 Or 485, 495, 595 P2d 1364 (1979). If a police officer "is able to point to specific and articulable facts which give rise to the inference that criminal activity is afoot, the officer has 'reasonable suspicion' and hence can stop the individual for investigation." *State v. Valdez, supra*, 277 Or at 626 (quoting the Commentaries from the Commission of the Proposed Oregon Criminal Procedure Code of 1972, which drafted ORS 131.615).

■ Applying the reasonable suspicion standard to the facts in the present case, the specific and articulable facts that support Derby's reasonable inference that criminal activity was afoot are found in the statement of the named informant, Storie, to the officer that "I just found this wallet in the store, * * * a bag of coke fell out of it," together with defendant's subsequent claim that the wallet was his. Because Storie is a named informant who initiated her report to the officer concerning her personal observations regarding the contents

---

[4] In *State v. Valdez*, 277 Or 621, 625, 561 P2d 1006 (1977), the court held that ORS 131.605 to 131.625 was intended to codify the "stop and frisk" cases of *Terry v. Ohio*, 392 US 1, 88 S Ct 1868, 20 L Ed 2d 889 (1968), and *State v. Cloman*, 254 Or 1, 456 P2d 67 (1969). *But cf. State v. Davis*, 295 Or 227, 247, 666 P2d 802 (1983) (Roberts, J., concurring) ("ORS 131.605 to 131.625 did not adopt wholesale the caselaw it codifies. * * * It is my conclusion that our statute must be applied on its own terms and provides the beginning point for an analysis of any stop and frisk situation. It has simply superseded *Terry*.").

of the wallet, she is presumed to be credible and reliable. *State v. Montigue*, 288 Or 359, 367, 605 P2d 656, *cert den* 449 US 846 (1980) (holding that, when a named citizen informant initiates a report based on a personal observation to a police officer, that citizen is presumed to be credible and reliable, because the citizen is subjecting himself or herself to potential civil liability).

■ Reduced to its essentials, defendant's argument here is that, because Storie was not an expert in drug identification and the officer knew that she was not such an expert, the officer could not reasonably rely on Storie's statement that she saw cocaine, at least without further inquiry. Defendant's argument asks for more than the reasonable suspicion standard requires.

People often speak in the shorthand of opinions or conclusions, not in the form of a recitation of pure fact. There was evidence presented in this case that members of society have a general knowledge regarding the appearance of cocaine. Storie testified that she believed that the powdery substance in the bag that she saw was cocaine because of her knowledge as to the appearance of cocaine from "[w]atching the news, [and] watching t.v. programs. You see it every day on the news." When Storie, a named informant, told Derby that she saw "a bag of coke," she was saying that she saw a transparent bag, small enough to be put in a wallet, that contained a white powdery substance. Having heard that statement, it was reasonable for Derby to add his *own* expertise concerning the way illegal drugs are carried and to infer that the white powdery substance could be cocaine. Defendant and his companion then drove up and claimed the right to possess the wallet. These facts gave Derby a reasonable suspicion that defendant's wallet contained cocaine and that defendant therefore was committing a crime. The requirements of ORS 131.615(1) were met. The Court of Appeals and the trial court erred in concluding otherwise.

Defendant has never challenged anything that occurred after Derby stopped his car. Indeed, his counsel agreed at the hearing on defendant's motion to suppress that, if Derby acted properly under ORS 131.615(1), when he stopped defendant's car, then the ensuing observation of the

cocaine, which was in plain view, and its seizure were reasonable under Article I, section 9, of the Oregon Constitution and the Fourth and Fourteenth Amendments to the United States Constitution. Because we hold that the stop was lawful, the trial court erred in suppressing the evidence seized as a result of that stop. The Court of Appeals erred in affirming the trial court.

The decision of the Court of Appeals and the order of the circuit court are reversed. The case is remanded to the circuit court for further proceedings.